**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 6, 2015**

# In the Court of Appeals of Georgia

A14A1560. GRAHAM v. THE STATE.

McFADDEN, Judge.

After a jury trial, Alethea Graham was convicted of forgery in the first degree. She appeals, challenging the sufficiency of the evidence, the allowance of hearsay testimony, the constitutionality of the forgery statute, a jury charge on the uttering element of first degree forgery, the denial of an appeal bond, and the denial of her constitutional right to a speedy trial. But there was enough evidence to support the verdict, the testimony allowed was not hearsay, the constitutionality of the statute was not timely raised, the jury charge was a correct statement of the law, and the trial court did not abuse its discretion in denying an appeal bond. Accordingly, we affirm in part. However, the trial court did not make the requisite findings of fact and

conclusions of law in determining the constitutional speedy trial issue, and we thus remand the case for the trial court to enter a proper order on that issue.

1. *Sufficiency of the evidence.*

Graham enumerates that the trial court erred in denying her motions for both a directed verdict of acquittal and a new trial because there was insufficient evidence to support the verdict.

> Whether an appellant is asking this court to review a lower court's refusal to grant a new trial or its refusal to grant a motion for directed verdict, this court can only review the case under the standard espoused in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979) to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict.

*Batten v. State*, 295 Ga. 442, 444 (1) (761 SE2d 70) (2014) (citations omitted).

So viewed, the evidence shows that Graham's father, Nathaniel Graham, Sr., lived in the High Point Crossing Apartments in Augusta, Georgia. On March 31, 2009, he fell inside his apartment and suffered a brain injury. He was admitted to the Veteran's Administration hospital in Augusta. According to a hospital administrator, Graham represented herself as being the guardian of her father and the hospital had a document on file that purportedly appointed her as such.

2

Approximately two weeks after the father's injury, Graham's brother Nathaniel and sister Lakenya went to visit their father in the hospital, and a hospital employee showed them the purported guardianship document. The document appeared to be letters of guardianship issued in 2002 by the Probate Court of Gwinnett County, finding Nathaniel Graham, Sr., to be incapacitated and designating Graham as his guardian. Graham's siblings were suspicious of the document's authenticity because their father had never lived in Gwinnett County.

Graham's sister took a copy of the purported letters of guardianship to the probate court in Gwinnett County. The chief clerk of the probate court testified that the document appeared suspect, did not appear to be any kind of record from that court, had markings and stamps that are not used by that court, and had an unrecognizable judge's signature. The chief clerk further testified that she conducted a search of the probate court records going back to the 1950's and determined that Graham's name did not appear anywhere in the records and that no guardianship had ever been filed for Nathaniel Graham, Sr., in that court.

The Judge of the Gwinnett County Probate Court testified that he had not signed the Graham guardianship document and that his purported signature on it was a forgery. He also testified, and the state introduced documentary evidence showing,

3

that the document appeared to be an altered copy of actual letters of guardianship that had been issued by the judge in an unrelated case involving a different ward and guardian.

An employee of the Richmond County Probate Court testified that in April 2009, a woman matching Graham's description came to the court with paperwork from the Gwinnett County Probate Court purportedly showing that she was the guardian of her father. The woman inquired about transferring the guardianship to Richmond County. But the employee thought the papers looked odd and had been altered, so she contacted the Gwinnett court and learned that the documents were not valid. The employee testified that the purported Gwinnett County letters of guardianship appointing Graham as her father's guardian may be the document that she had seen.

The former assistant manager of the High Point Crossing Apartments testified that after Graham's father was injured and taken to the hospital, Graham came to the apartment complex office with paperwork seeking access to her father's apartment. The manager put the papers in the father's file and gave Graham a key to the apartment. When the assistant manager subsequently looked in the file, she saw the

purported letters of guardianship from Gwinnett County, which had not previously been in the file. She later learned that the guardianship document was fake.

The prior version of the forgery statute, OCGA § 16-9-1, applies to this case.[1] It provides that

> a person commits the crime of first-degree forgery if "with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing."

*Martinez v. State*, 325 Ga. App. 267, 269 (1) (a) (750 SE2d 504) (2013) (quoting OCGA § 16-9-1 (a) (2007)).

The crux of Graham's challenge to the sufficiency of the evidence is that there was no direct eyewitness testimony that she possessed or uttered the forged letters of guardianship. But "[f]orgery . . . may be proved by circumstantial evidence." *Hudson v. State*, 188 Ga. App. 684, 689 (2) (374 SE2d 212) (1988) (citations and punctuation omitted). In this case, Graham was named as the guardian in the fraudulent letters of guardianship, there was direct evidence that she claimed to be her father's guardian, and as recounted above, there was ample circumstantial evidence that she possessed

---

[1] The amended code section became effective July 1, 2012, and applies to offenses occurring on or after that date. See Ga. L. 2012, p. 899.

and uttered that falsified document. Accordingly, the evidence "was sufficient for a rational trier of fact to find [Graham] guilty beyond a reasonable doubt of forgery in the first degree." *Martinez*, supra at 270 (1) (a) (citations and punctuation omitted). See also *Hudson*, supra at 689-690 (2) (although circumstantial, ample evidence to support guilty verdict as to first degree forgery).

2. *Hearsay.*

In three separate enumerations, Graham argues that the trial court erred in allowing her siblings and a hospital administrator to give hearsay testimony about a hospital employee's statement that Graham had presented the purported guardianship document to the hospital. However, as the state noted and as the trial court correctly found, the testimony was not hearsay because it was not offered to prove the truth of the matter asserted.

OCGA § 24-8-801 (c) provides: "'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the testimony concerning the out-of-court statement was not offered to prove that Graham had given the falsified document to the hospital. Rather, it was offered to explain how Graham's siblings learned of the document and their sister's purported guardianship, and to explain their

6

investigation into the authenticity of the document. Accordingly, the testimony did not constitute hearsay because the state did not offer "the words for the truth of their content." *Herieia v. State*, 297 Ga. App. 872, 875 (2) (678 SE2d 548) (2009) (citation omitted).

And contrary to Graham's confrontation clause argument, since the testimony was not hearsay, it did not violate her constitutional right to confront witnesses. "The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Under these circumstances, the trial court did not violate [Graham's] right to confront and cross-examine a witness by admitting the [non-hearsay] testimony of [the witnesses]." *Jennings v. State*, 285 Ga. App. 774, 776 (1) (648 SE2d 105) (2007) (citations and punctuation omitted).

3. *Constitutional challenge to forgery statute.*

Graham complains that the trial court erred in denying her motion in arrest of judgment challenging the forgery statute as constitutionally vague. However, the Georgia Supreme Court, in an order transferring the case to this court, ruled that Graham had "waived her constitutional challenge to the forgery statute under which she was convicted by raising it for the first time in a motion in arrest of judgment.

7

*Perez-Castillo v. State*, 275 Ga. 124 (562 SE2d 184) (2002)." Accordingly, this claim of error presents nothing for us to review.

4. *Jury charge.*

Graham contends that the term "utter" means only to speak, and therefore the trial court erred in charging the jury that the first degree forgery element of "[u]ttering is synonymous with the words pass or tender." However, "this objection is without merit because the words 'pass or tender' are synonymous with the words 'utter and publish.' If the accused uttered the forged [document], he published it. If he passed it, he uttered and published it; and if he uttered and published and passed it, he necessarily tendered it." *Smith v. State*, 13 Ga. App. 663, 667 (79 SE 764) (1913). See also *Warren v. State*, 309 Ga. App. 596, 597 (2) (711 SE2d 108) (2011) (forged document may be uttered by offering directly or indirectly, by words or actions, such document as good). Accordingly, "it was not erroneous for the trial court to charge using the additional . . . term[s pass or tender]." *Crowder v. State*, 218 Ga. App. 630, 632 (3) (462 SE2d 754) (1995).

5. *Appeal bond.*

Graham claims that the trial court erred in denying her request for an appeal bond. The claim is without merit.

"[T]here is no constitutional right to bond pending appeal." *Browning v. State*, 254 Ga. 478, 479 (2) (330 SE2d 879) (1985) (citations omitted). However, under OCGA § 5-6-45 (a), a criminal defendant may be given an appeal bond if the sentence is bailable. The question whether to grant bond after conviction is committed to the discretion of the convicting court, and an appellate court will not control that discretion unless it has been abused. *Wade v. State*, 218 Ga. App. 377, 378 (2) (461 SE2d 314) (1995) (citations and punctuation omitted). Here, Graham has made no showing of such an abuse of discretion in the denial of her request for an appeal bond.

6. *Speedy trial.*

Graham claims she was denied her constitutional right to a speedy trial. The record shows that Graham was indicted in June 2009. Nearly four years later, in March 2013, Graham filed a constitutional speedy trial demand and alternatively sought dismissal of the charges for the delay. The record does not contain an order explicitly denying the motion to dismiss the charges, but the trial court implicitly denied the motion by proceeding with a jury trial on April 23, 2013. Graham claimed a denial of her constitutional right to a speedy trial in her motion for new trial, which the trial court summarily denied.

"The framework for determining constitutional speedy trial claims requires the trial court to apply the two-tier analysis enunciated in *Barker* [*v. Wingo*, 407 U. S. 514, 522-523 (II) (92 SCt 2182, 33 LE2d 101) (1972)], and *Doggett v. United States*, 505 U. S. 647, 651 (112 SCt 2686, 120 LE2d 520) (1992)." *Cawley v. State*, 324 Ga. App. 358, 359 (750 SE2d 428) (2013) (citations omitted).

> The weighing of the *Barker* factors is committed to the substantial discretion of the trial court, and its ultimate judgment is reviewed on appeal only for an abuse of that discretion. It is imperative, therefore, that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*. Absent such findings, there is no exercise of discretion for this [c]ourt to review. Accordingly, we have vacated and remanded cases where the trial court failed to enter written findings of fact and conclusions of law in accordance with *Barker*.

*Cawley*, supra at 360 (citations and punctuation omitted).

In this case, there is no order from the trial court that contains such findings of fact and conclusions of law. Accordingly, "we affirm the finding of guilt in light of our rulings above, and we remand for entry of a proper order addressing the speedy trial motion pursuant to *Barker v. Wingo*." *Smith v. State*, 325 Ga. App. 405, 411 (5) (750 SE2d 758) (2013) (footnote omitted). See also *Culbreath v. State*, 328 Ga. App. 153, 159-162 (4) (761 SE2d 557) (2014).

*Judgment affirmed in part and case remanded with direction. Andrews, P. J., and Ray, J., concur.*