**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 29, 2015**

# In the Court of Appeals of Georgia

A15A0328. BROWN v. THE STATE.                          JE-013C

ELLINGTON, Presiding Judge.

A Walton County jury found Isaac Brown guilty of aggravated assault, OCGA § 16-5-21 (b) (2); possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b) (1); and possession of a firearm by a convicted felon, OCGA § 16-11-131 (b). Brown appeals from the denial of his motion for a new trial, contending that the trial court erred in admitting hearsay evidence and that his trial counsel was ineffective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that, on November 14, 2011, Brown and his brother, Abraham, assaulted Mario

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Fambrough. Fambrough testified that he was standing outside his uncle's home with a friend, talking on his cell phone, when the Brown brothers walked up to him. Both Fambrough and his friend, Jarvaris Brake, testified that the brothers pulled out handguns and pointed them at Fambrough. Brake fled inside the house while the brothers pistol-whipped Fambrough until he surrendered his wallet.[2] Fambrough's uncle testified that he saw two men beating his nephew but that he did not see their faces. As a result of the assault, Fambrough suffered facial lacerations and a swollen eye. Brown, who elected to testify in his defense, contended that he and Fambrough had gotten into a fight over a drug deal and that he had been unarmed.

After Fambrough had been treated for his injuries, the responding police officers took him into custody on an outstanding warrant for a probation violation. The police put Fambrough in a holding cell that was also occupied by Brown's other brother, David, who had been arrested the day before and was not involved in the assault. Fambrough complained to David about what David's brothers had done to him. Fambrough testified that, after he had been released from jail, David called him from the jail and told him that his mother would pay him to tell the police that his

---

[2] The State also indicted Brown for armed robbery, OCGA § 16-8-41, but the jury acquitted him of that offense.

brothers were not involved in the assault. A recording of that conversation was admitted in evidence and played for the jury.

The State also presented the testimony of Antonio Phillips, a person who had been incarcerated in the same cell block in the Walton County jail with Brown while Brown was awaiting trial. Phillips testified that he knew Fambrough and the Brown brothers. He said that Fambrough had once hit him with a brick, and that Brown was aware that he and Fambrough had fought. He testified that Brown had approached him while they were in jail and had spoken with him briefly about Brown's upcoming trial, telling Phillips that his lawyer would be contacting him. A few weeks later, a trustee handed Phillips a letter addressed to "Young Gun," which is Phillips' nickname. The trustee said the letter was from "Trip," which is Brown's nickname. The trustee also pointed toward Brown, who was standing a short distance away. A corrections officer took the letter from Phillips before he could finish reading it. In his unsigned letter, Brown urged Phillips to testify that he had witnessed an altercation and to testify that Brown and his brother had been unarmed. The letter contained all the details Phillips would need to fabricate his eyewitness testimony: the date and time of the incident, the location, the names of all those present, and how the altercation had allegedly occurred. In the letter, Brown pleaded: "I need your help

3

bad. . . . [the prosecution is] talking [a]bout a 30 do 18 [sentence.] . . . I'll see if my lawyer will come see you soon[.]"

1. Brown contends the trial court erred in admitting the recorded telephone call between David and Fambrough, arguing that David's statements about his mother's offer to pay Fambrough to tell the police that his brothers were not involved in the assault constituted inadmissible hearsay. The transcript shows that Brown made a general hearsay objection to the recording, which the court summarily overruled. Because the statements were nonhearsay, we find no error in the court's ruling on the objection.

OCGA § 24-8-801 (c) provides: "'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[3]

> Whether an out-of-court statement is hearsay depends on whether it is offered for its truth *or merely for the fact that it was made*. Where the alleged fact is only so if the substance of the statement is the truth, the statement constitutes hearsay. On the other hand, where the alleged fact

[3] Brown was tried in August 2013; therefore, the new Evidence Code applied to his trial. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

may be so regardless of whether the statement is true or false, the statement is not hearsay.

(Citation omitted; emphasis added.) *United States v. Webster*, 649 F2d 346, 349 (III) (5th Cir. Fla. 1981).[4] See also *Graham v. State*, 331 Ga. App. 36, 39 (2) (769 SE2d 753) (2015) ("[T]estimony did not constitute hearsay because the state did not offer the words for the truth of their content.") (citation and punctuation omitted).

In this case, the statements are not hearsay because the State offered them for a purpose that did not require the jury to assume that the substance of the statements was true. Here, the evidentiary "facts" that the state offered the statement to prove are that David had conveyed to Fambrough an offer to buy his testimony and that Fambrough had rejected it. Those facts do not depend on whether David was telling the truth about whether he or his mother would actually pay Fambrough to give

---

[4] The Supreme Court of Georgia recently noted that, "where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015). Additionally, in the event of any conflicting interpretations between the Eleventh Circuit and other federal circuit courts, we must follow the Eleventh Circuit as of January 1, 2013. *Bradshaw v. State*, 296 Ga. 650, 655 (3) (769 SE2d 892) (2015). Further, the Eleventh Circuit has adopted as binding precedent decisions made by the Fifth Circuit handed down on or before September 30, 1981. *Bonner v. City of Prichard*, 661 F2d 1206, 1209 (11th Cir. 1981) (en banc).

testimony favorable to Brown. Rather, David's statements were significant because they had been made and because they were likely to have had an effect on the hearer, Fambrough. The jury could infer from the conversation that Fambrough was a more credible witness for having rejected the offer. Because the evidentiary value of the statements did not rest upon whether the declarant was being truthful or honest, the trial court did not err in overruling Brown's general objection to the statements on hearsay grounds. See *Graham v. State*, 331 Ga. App. at 39 (2) (testimony concerning an out-of-court statement was not offered for its truth, but to explain its effect on those who heard the statement and their subsequent conduct, and was, therefore, admissible as nonhearsay). See also *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.") (citations omitted).

2. Brown contends that his trial counsel was ineffective for failing to object on hearsay grounds to Phillips' testimony that, when the prison trustee handed him the letter, the trustee pointed to Brown and said that the letter was from Brown. He argues that the trustee's gesture and statement were the only evidence establishing that the letter was from Brown and that, had counsel interposed a hearsay objection, the letter would not have been authenticated and admitted in evidence.

6

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See also *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (In analyzing the prejudice element, "[t]he question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt.") (citation and punctuation omitted). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995); *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991). As the appellate court, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

7

Pretermitting whether the trustee's statement and gesture identifying Brown as the letter's author constituted hearsay to which trial counsel should have interposed an objection, Brown can show no harm as a result of the failure to object because the letter was sufficiently authenticated by other admissible evidence.

The State was required to properly authenticate Brown's letter as a condition precedent to its admissibility. OCGA § 24-9-901 (a).[5] The State was required to present "sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be." (Citation omitted.) *United States v. Belfast*, 611 F.3d 783, 819 (VI) (C) (11th Cir. 2010). "Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." Id. See also *Williams v. State*, 280 Ga. 584, 587 (2) (630 SE2d 370) (2006) ("Handwriting evidence is not required in every case, however, so long as there is other evidence, circumstantial or otherwise, to make a prima facie showing of authenticity.") (footnote omitted). A document may be authenticated "[a]ppearance,

_____

[5] OCGA § 24-9-901 (a) provides: "The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

8

contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances[.]" OCGA § 24-9-901(b) (4).

Even absent Phillips' testimony as to the trustee's statements and gestures indicating that the letter was from Brown, the State presented sufficient evidence establishing a prima facie case from which the jury could infer that the letter was from him. It is apparent from the contents of the letter – which included names, places, dates, times, and other details of the incident – that only someone with great familiarity with the incident could have written it. The letter was written in the first person and implored Phillips to help "us," "the triplets," which was the nickname for Brown and his brothers. That the author was Brown could be inferred from those details, as well as the statements: "[The prosecution is] talking [a]bout a 30 do 18 [sentence.] . . . I'll see if my lawyer will come see you soon[.]" Brown had spoken to Phillips concerning his upcoming trial and told him that his lawyer would be contacting him soon, and those prior conversations were consistent with the statements in the letter. Also, when Phillips received the letter from the trustee, Brown was standing a short distance away, looking at Phillips. Brown was the only one of the three brothers incarcerated in Phillips' cell block. Given this evidence, Brown has failed to establish that a hearsay objection would have resulted in the letter

9

being excluded on the ground of insufficient authentication. See *United States v. Mentor*, 570 Fed. Appx. 894, 897 (II) (11th Cir. 2014) (A letter was held to be sufficiently authenticated when the witness testified that the defendant, her ex-boyfriend, was the only person who would be sending her a letter, and the contents indicated that it was from him. It contained references to her, her brother, her best friend, and other key details leading her to identify the defendant as the author.); see also *Foster v. State*, 294 Ga. 383, 385 (3) (SE2d ) (2014) ("Under all of [the facts adduced], it is very unlikely that anyone other than [Foster] had written the letter. Accordingly, the circumstances were sufficient to make a prima facie showing of authenticity."); *Williams v. State*, 280 Ga. at 587 (2) ("Johnson testified that Williams threw the note at him while Johnson was near Williams' cell, and that the note was consistent with prior conversations between Williams and Johnson. The note was addressed to 'C-dog,' which was Johnson's nickname. Johnson, who was not an accomplice in the case, turned the note over to the sheriff. This evidence plainly authenticates the writing, and it was not error for the trial court to admit the note.")

Under the circumstances present in this case, even if Phillips' testimony concerning the trustee's statement and gesture indicating that Brown had written the letter constituted inadmissible hearsay, the erroneous admission of those statements

10

was harmless when the jury would have been able to infer that Brown had written it from the sufficiently authenticated and admissible letter itself. Because the alleged hearsay was cumulative of other evidence of the letter's authorship, it was without material effect on the verdict. See *Skinner v. State*, 318 Ga. App. 217, 219 (1) (733 SE2d 506) (2012) (admission of hearsay evidence harmless where it was cumulative of admissible evidence); *Moody v. State*, 277 Ga. 676, 680 (4) (594 SE2d 350) (2004) (accord). And "the failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel." (Punctuation and footnote omitted.) *Ashmid v. State*, 316 Ga. App. 550, 558 (3) (b) (730 SE2d 37) (2012). Consequently, the trial court did not err in denying Brown's motion for a new trial on ineffective assistance of trial counsel grounds.

*Judgment affirmed. Dillard and McFadden, JJ., concur.*