309 Ga. 504
FINAL COPY

S20A0739.  McDOWELL v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, James McDowell appeals his conviction for murder, contending that the trial court erred by admitting evidence relating to a certain handgun connected to the crime.[1] For the reasons set forth below, we affirm.

---

[1] On December 13, 2011, McDowell, Lloyd Stephens, and Demetrius Brewer were jointly indicted for malice murder, felony murder predicated on aggravated assault, and felony murder predicated on possession of a firearm by a convicted felon. Though the defendants were also indicted for several other non-murder crimes, those crimes were dismissed by the trial court because the statute of limitation had expired. At a joint jury trial ending on April 5, 2013, all three co-defendants were found guilty of the remaining counts. On April 15, 2013, the trial court sentenced McDowell to life imprisonment without the possibility of parole pursuant to OCGA § 17-10-7 (c). The trial court purported to merge the counts of felony murder into the malice murder; however, the counts of felony murder were actually vacated by operation of law. *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). McDowell filed a timely motion for new trial on April 26, 2013, which he amended on November 10, 2017 and on May 14, 2018. On December 4, 2018, the trial court denied McDowell's motion for new trial as amended, but held that McDowell had been improperly sentenced. On December 13, 2018, the trial court resentenced McDowell to life imprisonment with the possibility of parole. Subsequently, McDowell timely filed a notice of appeal. His case, submitted for decision on the briefs, was docketed to the April 2020 term of this Court.

1. The evidence presented at trial was set forth in our recent opinion affirming the convictions of McDowell's co-defendants, Lloyd Stephens and Demetrius Brewer:

> Viewed in the light most favorable to the verdicts, the evidence presented at trial shows that, on the evening of October 25, 2002, [Eric] Kemp and two of his cousins, James Fields and Ernest Williams, were playing pool and drinking at an electronics repair shop owned by Kemp. At one point, Fields heard noises at the front door. Fields checked the door, but did not see anyone there. As Fields returned to the back of the shop, Kemp went to check the door himself. Fields then heard the door being kicked in, and he saw a number of men rush inside. In the commotion, Fields and Williams believed police were raiding the shop because Williams had been "cooking drugs" in the back. Fields feared being arrested on drug charges, so he and Williams fled through a back door and ran to their grandmother's house nearby.
>
> A few minutes before this intrusion, several witnesses saw or interacted with a group of men who exited a blue vehicle and walked down a pathway that led to Kemp's shop. Eyewitness testimony placed Stephens, Brewer, and McDowell in this group of men. Anthony Styles, one of the witnesses, testified that Brewer, whom Styles had known since elementary school, was carrying a handgun, and McDowell was carrying a rifle. Moments after the group of men was seen approaching Kemp's shop, multiple gunshots rang out. Thereafter, some of the men from the car were seen running back toward the same vehicle and putting firearms in the trunk.
>
> When police first responded to the scene of the shooting, they discovered Kemp's body slumped over a

pool table. His pockets were turned inside out, he appeared to have been beaten with pool cues, and he had a gunshot wound on the left side of his neck. Ballistics tests indicated that an AK-47 or SKS-type rifle could have caused the wound. Shell casings from a .40-caliber handgun were also found at the scene.

After Kemp's death, Brewer admitted to Gayle Glass that he had been involved in the robbery and the murder of the "beeper man." Brewer made this statement while pointing at Kemp's shop. Further evidence indicated that Kemp was known as the "beeper man" because he repaired "beepers" at his business. Similarly, Stephens admitted to an acquaintance, Daniel Chatman, that Stephens, McDowell, and Jeremy Horton were involved in Kemp's murder.

Within twenty-four hours of Kemp's death, two men whom police considered to be suspects in the crime, including Horton, were killed. Based on the information available at the time, the case was then closed. It was reopened in 2010, however, when Chatman, then a federal witness in another case, implicated Stephens and McDowell in Kemp's murder. Detectives investigated Chatman's information further and found that Stephens and McDowell had been arrested four days after the murder. At the time of the arrest, Stephens and McDowell were passengers in a stolen vehicle found to contain both a large amount of cocaine and a .40-caliber handgun. Officers found two spent shell casings during a search of the vehicle, one belonging to a .40-caliber handgun and one belonging to an assault rifle, the two types of guns used in the murder of Kemp. Ballistics tests confirmed that the spent .40-caliber shell casing from the murder scene in Kemp's shop was fired from the same weapon recovered from the vehicle in which Stephens and McDowell were sitting at the time of their arrest.

Additional investigation eventually led to the arrest of Brewer, based on witness information detailed above.

*Stephens v. State*, 307 Ga. 731, 731-733 (838 SE2d 275) (2020).

McDowell has not challenged the sufficiency of the evidence; however, in accordance with our customary practice in murder cases,[2] we have nonetheless reviewed the evidence and conclude that it was sufficient to enable the jury to find McDowell guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, McDowell contends that, due to the destruction of the .40-caliber handgun prior to trial, the State could not prove an appropriate chain of custody for the handgun at trial, and the trial court erred by allowing the admission of evidence of that handgun. We disagree.

The relevant portion of the record on appeal shows that, when

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (___ SE2d ___) (2020). The Court began assigning cases to the December Term on August 3, 2020.

the handgun at issue was initially recovered from the car in which McDowell was a passenger, the serial number engraved on the gun was documented by police in the incident report. The gun was later transported to the GBI for ballistics testing, and, again, the serial number of the gun was recorded by the GBI. At some point toward the end of 2012, the gun was inadvertently destroyed,[3] and, though it had been made available to the defense prior to destruction, it was not available at the time of the trial.

At trial, co-defendant Stephens contended that, because the gun was a fungible object, the State was required to present a chain of custody for the gun.[4] Stephens further contended that the State could not show such a chain because the gun had been destroyed, and, as a consequence, evidence regarding the handgun would not be admissible.[5] McDowell joined in Stephens's arguments at trial,

---

[3] The State explained that the handgun was destroyed because it had inadvertently been labeled as "property" instead of "evidence."

[4] Stephens made this argument as part of a motion for a mistrial, but, in effect, he was making a motion to exclude the evidence. We will view the contentions raised here in this light.

[5] In making this argument, Stephens relied on cases decided under Georgia's old Evidence Code; however, at the time of his trial, the current Evidence Code had become effective.

raised the same arguments in his motion for new trial, and raises them once again in this appeal.

Here, only evidence relating to the handgun was admitted at trial, not the handgun itself. So, McDowell's argument, which is based on proving the chain of custody of the *handgun,* is generally misplaced. And, even if we assume without deciding that McDowell's chain of custody argument could somehow apply to the evidence concerning the handgun which was admitted at trial, as opposed to the handgun itself, McDowell's argument would still fail. OCGA § 24-9-901 (a) provides: "The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

> Authentication may be achieved through many means, including, but not limited to: "[t]estimony of a witness with knowledge that a matter is what it is claimed to be[,]" id. at (b) (1) . . . and, "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances[,]" id. at (b) (4). The party proffering the evidence must present sufficient evidence "'to make out a prima facie case that the proffered evidence is what it

purports to be.' Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." (Citations omitted.) *United States v. Belfast*, 611 F3d 783, 819 (VI) (C) (11th Cir. 2010). See also *Brown v. State*, 332 Ga. App. 635 (2) (774 SE2d 708) (2015).

*Smith v. State*, 300 Ga. 538, 540-541 (2) (b) (796 SE2d 666) (2017).[6]

Admission of such evidence is reviewed for an abuse of discretion, *United States v. Lebowitz*, 676 F3d 1000, 1009 (III) (11th Cir. 2012), and a "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence." *United States v. Lopez*, 758 F2d 1517, 1521 (11th Cir. 1985).

The handgun in question bore a serial number, and the State made a prima facie showing that the handgun found in the stolen vehicle McDowell and Stephens were in just days after Kemp's murder was the same handgun the GBI tested. Specifically, the police officer who pulled over McDowell and Stephens in the stolen

---

[6] OCGA § 24-9-901 tracks the language of Federal Rule of Evidence 901. So, to interpret this statutory provision, we look to the decisions of the federal appellate courts interpreting Rule 901, rather than to cases discussing authentication under our old Evidence Code. See, e.g., *Smith v. State*, 299 Ga. 424, 438 (2) (b) (788 SE2d 433) (2016).

vehicle testified that the incident report he wrote at the time of the stop contained the serial number of the recovered handgun. That police officer testified at trial regarding the serial number, and his police report, which contained the serial number, was introduced as an exhibit. The GBI expert for the State testified that, upon completion of the ballistics report, she recorded the model and serial number of the handgun, which matched the number in the incident report. The GBI firearms examiner's official report was also introduced as an exhibit.

This evidence made out a prima facie case that the proffered evidence is what it purports to be, namely evidence that the specific handgun was found in the car with McDowell. OCGA § 24-9-901. In any event, McDowell's contentions about chain of custody go to the weight of the evidence, not its admissibility.[7] *Lopez*, supra, 758 F2d at 1521. As such, McDowell's argument that evidence relating to the

---

[7] McDowell does not contend that the handgun was not actually found in the car in which he was a passenger, and he does not argue that the ballistics testing was incorrect. Also, McDowell makes no contention that the State destroyed the handgun with improper purpose or intent.

handgun was inadmissible due to the State's failure to prove a chain of custody has no merit.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 10, 2020.
Murder. Fulton Superior Court. Before Judge Campbell.
*Jerry W. Chappell II*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.