300 Ga. 538
FINAL COPY

S16A1781.  SMITH v. THE STATE.

HUNSTEIN, Justice.

Appellant Christopher Rayshun Smith was tried and convicted of murder and related offenses in connection with the shooting death of Kevin Daniel and aggravated assault of Kamenika Whatley.[1]  Smith appeals, claiming three

[1] In August 2013, a Floyd County grand jury jointly indicted Christopher Rayshun Smith, Antonio Devion Jones and Jamarrcus Rhashad Sullivan on eleven counts of criminal acts against Kevin Daniel and Kamenika Whatley having occurred on June 1, 2013.  Specifically, the men were charged with: malice murder (Count 1 – Daniel); one count of felony murder predicated on aggravated assault, aggravated battery and armed robbery (Count 2 – Daniel); two counts of armed robbery (Count 3 – Daniel, Count 4 – Whatley); two counts of aggravated assault with intent to rob and kill (Count 5 – Daniel, Count 6 – Whatley); two counts of aggravated assault with a deadly weapon (Count 7 – Daniel, Count 8 – Whatley); one count of aggravated battery (Count 9 – Daniel); one count of false imprisonment (Count 10 – Daniel and Whatley); and two weapons charges (Count 11 – Daniel, Count 12 – Whatley).

Smith was tried by himself from March 16-18, 2015, after which a jury found him guilty of felony murder (Count 2), aggravated battery (Count 9), false imprisonment (Count 10), two counts of armed robbery (Counts 3 and 4), two counts of aggravated assault with a deadly weapon (Counts 7 and 8), and the two weapons charges (Counts 11 and 12).  He was acquitted of malice murder (Count 1) and the two aggravated assault with intent to rob and kill charges (Counts 5 and 6).

On May 5, 2015, pursuant to OCGA § 17-10-7 (c), the trial court sentenced Smith to life imprisonment without the possibility of parole for the felony murder of Daniel (Count 2), 20-years consecutive for the armed robbery of Daniel (Count 3), 20-years consecutive for aggravated assault of Daniel with a deadly weapon (Count 7), two 5-year consecutive sentences for the weapons charges which run concurrent with one another (Counts 11 and 12), and four 20-year concurrent sentences for the aggravated assault and armed robbery of Whatley (Counts 4 and 8), the aggravated

instances of trial court error.   Though we find no merit in any of Smith's trial phase enumerations, we do find error with regard to his sentences and therefore we must vacate and remand for resentencing.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows.  Smith, a drug dealer, devised a plan with co-indictees Antonio Jones and Jamarrcus Sullivan to rob Kevin Daniel, a competing dealer, of his drugs and money.  On June 1, 2013, Smith dropped Jones and Sullivan off near Daniel's home in Rome, Georgia.  As the men approached the house, with Smith's shotgun in tow, Jones recognized an SUV parked in the driveway as belonging to Kamenika Whatley.  Scared that she would be able to identify him, the men decided that Jones would open the front door and Sullivan would "handle everything else."

---

battery of Daniel (Count 9), and the false imprisonment of both victims (Count 10), for a total of life without parole plus 45 years.  As discussed in Division 4, the trial court erred when it sentenced Smith on Counts 3, 7, and 9.

Smith filed a motion for new trial on May 28, 2015.  The trial court held a hearing on the motion on September 1, 2015, and denied it on the same day.  Smith filed a notice of appeal to the Court of Appeals on October 2, 2015.  The appeal was transferred to this Court and was later dismissed as untimely as Smith had filed his notice one day late.  See Smith v. State, Case No. S16A0749 (Feb. 8, 2016).  Smith then filed a motion for an out-of-time appeal in the trial court on February 18, 2016, which was granted on March 22, 2016.  Smith timely filed a notice of appeal to this Court.  The appeal was docketed to the September 2016 term of this Court and was thereafter submitted for decision on the briefs.

Jones opened the door. Sullivan went inside, aimed the shotgun at Daniel and Whatley and demanded drugs and money. Whatley complied but Daniel ignored the command and charged toward the intruders. Jones fled the house and hid behind Whatley's car in the driveway as Daniel and Sullivan fought over the shotgun. Shortly thereafter, witnesses heard gunshots and the sound of glass breaking. Daniel stumbled outside holding the shotgun. He then fell off of his front porch and landed in the yard. Sullivan exited the house, stood over Daniel and shot him with a handgun. Sullivan then grabbed the shotgun, as well as Whatley's and Daniel's cell phones, and fled the scene with Jones. Smith picked up Sullivan and Jones in his red Chevy Malibu, at which time Sullivan explained that he had to shoot Daniel because Jones "messed everything up."

When law enforcement arrived at Daniel's home, they found him face down in the front yard and somewhat responsive. He was taken to the hospital and later died from multiple gunshot wounds. Law enforcement found a .40 caliber shell casing and $3,500 inside the home; they located drugs in the front yard. Cell phone records introduced at trial showed numerous phone calls made

between Sullivan and Smith on the night of the murder. Daniel's blood was found inside Smith's red Chevy Malibu.

While they were incarcerated, Smith wrote letters to Jones regarding the case, including requests that Jones deny Smith's involvement in the crimes. The State also introduced jail phone calls made by Smith in which he discussed the crimes, witnesses, and evidence.

1. Though not enumerated by Smith, we find that the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Smith was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Smith claims that the trial court erred in admitting into evidence two recorded jail calls and handwritten letters. "We review the admission of evidence for an abuse of discretion." Moore v. State, 295 Ga. 709, 712 (2) (763 SE2d 670) (2014).

(a) *Jail phone calls*

Smith first contends that the trial court erred by admitting two incriminating recorded jail calls — one between Smith and his brother and the other between Smith and his wife — alleging that the State failed to lay the

4

proper foundation for the phone calls to be admitted. Specifically, Smith argues that the State failed to properly identify the speakers, the proper operation of the recording devices, and whether any changes or deletions were made to the recordings as required by Davis v. State, 279 Ga. 786 (621 SE2d 446) (2005) and its progeny. We disagree.

Contrary to Smith's assertions, because he was tried after January 1, 2013, OCGA § 24-9-923 (c) of the new Evidence Code, not Davis, controls. See Jones v. State, 299 Ga. 40 (4) (785 SE2d 886) (2016). OCGA § 24-9-923 (c) allows the admission of computer controlled audio recordings, such as jail phone calls, "when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered . . . ."

Here, the State called an investigator from the District Attorney's Office to authenticate the two jail recordings. The investigator testified that she was able to access the jail's recorded phone calls through a computer program. The investigator listened to Smith's recorded calls and explained that she was able to identify the parties on both phone calls because they identified themselves in

5

the recordings on numerous occasions. Moreover, both recordings contained automated information from the Floyd County Jail, including the number called, the inmate number, the date and time the call was placed, and a male voice identifying the caller as "Lil' Chris," Smith's nickname. Finally, during the calls, the parties discussed information regarding the case, such as potential witnesses, the ongoing investigation by law enforcement, and the role of Smith's co-indictees in the crimes. All of this evidence tends to show that the automated recordings were, in fact, recordings of the phone calls Smith made from jail to both his brother and wife. See Jones, 299 Ga. at 45. Consequently, the trial court did not abuse its discretion in admitting these two phone calls at trial.

(b) *Handwritten letters*

Smith also claims that the trial court erred by admitting the letters adduced by the State at trial as authored by him because the State, he claims, failed to lay the proper foundation for their admission. OCGA § 24-9-901 requires "authentication or identification as a condition precedent to admissibility" which "shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. at (a). Authentication may be achieved through many means, including, but not limited to: "[t]estimony of a

6

witness with knowledge that a matter is what it is claimed to be[,]" id. at (b) (1); "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation[,]" id. at (b) (2); and, "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances[,]" id. at (b) (4). The party proffering the evidence must present sufficient evidence "'to make out a prima facie case that the proffered evidence is what it purports to be.' Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." (Citations omitted.) United States v. Belfast, 611 F3d 783, 819 (VI) (C) (11th Cir. 2010). See also Brown v. State, 332 Ga. App. 635 (2) (774 SE2d 708) (2015).

Co-indictee Jones testified that he was familiar with Smith's handwriting and further identified the handwriting in many of the letters as belonging to Smith. Jones also testified that many of the letters were either directly given to him by Smith, or were delivered by a third party at Smith's request. Finally, the content of the letters referenced information concerning the case, including potential witnesses, evidence, and even included an affidavit for Jones to sign

7

stating that Smith was not involved in the crimes. Accordingly, the trial court did not abuse its discretion by admitting Smith's handwritten letters at trial as the State provided sufficient evidence to establish a prima facie case that the letters were written and sent by Smith.

3.      There is also no merit to the contention that the trial court violated Smith's right of confrontation by, as he claims, prohibiting trial counsel from fully cross-examining co-indictee Jones regarding his bias and motive. At trial, the State called Jones as a witness in its case-in-chief. On cross-examination, counsel elicited testimony from Jones that he had not pled guilty or been sentenced on any of the charges he was facing in the joint indictment. Counsel was also able to get Jones to admit that he was facing a potential life without parole sentence for murder. At this time, the State objected, arguing that, while counsel could ask Jones about any potential benefit he may be receiving in exchange for his testimony, he could not go into the potential sentencing ranges. The trial court agreed with the State.

Smith now argues, as he did below, that this ruling was error as it violated his Sixth Amendment right to confront the witnesses against him. We disagree.

> Although the Sixth Amendment right to confrontation secures the right of cross-examination, the right of cross-examination "is not an

8

> absolute right that mandates unlimited questioning by the defense." To the contrary, trial courts "retain wide latitude . . . to impose reasonable limits on cross-examination based on concerns about, among other things . . . interrogation that is . . . only marginally relevant." The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion.

(Citations omitted.) Nicely v. State, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012). We have previously held that, where a witness has not obtained a concrete plea deal from the State in exchange for his testimony, the accused "'may not bring out the potential penalties faced by the witness.'" (Citations omitted.) Cheley v. State, 299 Ga. 88, 94 (4) (786 SE2d 642) (2016).

Here, the record shows that counsel was permitted to cross-examine Jones concerning his potential motive or bias, including the charges he was facing and any potential plea deal. "The mere fact that [Smith] was unable to ask [Jones] to conjecture about possible punishment did not diminish [Smith's] attempt to show [Jones'] motive for testifying on behalf of the State, and did not amount to an abuse of the trial court's discretion." Hodo v. State, 272 Ga. 272, 275 (4) (528 SE2d 250) (2000).

4.     While there is no error with respect to Smith's trial, we do find error in his sentences. As discussed in footnote 1, supra, in Count 2 of his indictment, Smith was charged with felony murder predicated upon the armed robbery, aggravated assault and aggravated battery of Kevin Daniel. He was also separately charged with the armed robbery, aggravated assault and aggravated battery of Daniel in Counts 3, 7 and 9 of the indictment. Smith was convicted and sentenced on all of these counts. This was error as the underlying felonies of aggravated assault, aggravated battery and armed robbery merged as a matter of fact into the felony murder. See Kipp v. State, 294 Ga. 55, 61 (3) (751 SE2d 83) (2013) (citing Malcolm v. State, 263 Ga. 369 (5) (434 SE2d 479) (1993)). Consequently, the sentences for these counts must be vacated. Moreover, Smith must be resentenced on Counts 4, 8, 10, 11 and 12 as each was originally sentenced to be served concurrently with or consecutive to the sentences vacated by this opinion. Accordingly, we remand to the trial court so a proper sentence may be imposed on all remaining counts.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided February 6, 2017.

Murder. Floyd Superior Court. Before Judge Durham.

Roger L. Curry, for appellant.

Leigh E. Patterson, District Attorney, Natalee L. Staats, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.