302 Ga. 832
FINAL COPY

S17A1938.  HARRIS v. THE STATE.

PETERSON, Justice.

Blake Ramone Harris appeals his convictions for malice murder and other crimes in connection with the shooting death of Ray Murphy.[1] Harris argues that the trial court improperly commented on a witness's credibility and that the trial court erred by not allowing him to ask a GBI investigator whether he used a waiver of rights form before interviewing Harris. We conclude that the trial court's isolated statement, which Harris did not object to, had no effect on the

[1] Murphy was killed on August 10, 2013. On October 25, 2013, a Walton County grand jury indicted Harris for malice murder, two counts of felony murder, armed robbery, three counts of aggravated assault, a violation of the Georgia Street Gang Terrorism and Prevention Act, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. At the conclusion of a trial held in October 2015, the jury found Harris guilty on all counts except for the gang and possession of a firearm by a convicted felon charges, which were nolle prossed. The trial court sentenced Harris to life without parole for malice murder, a concurrent life sentence for armed robbery, concurrent 20-year sentences for two of the aggravated assault counts, and a consecutive five-year sentence for the firearm possession. The trial court merged the remaining aggravated assault charge and purported to merge the felony murder counts, which were actually vacated by operation of law. See Favors v. State, 296 Ga. 842, 847-848 (770 SE2d 855) (2015). Harris filed a timely motion for new trial, which he subsequently amended. The trial court denied the motion on June 19, 2017. Harris filed a timely notice of appeal, and the case was docketed to this Court for the August 2017 term and submitted for a decision on the briefs.

outcome of the trial. We also conclude that the trial court did not abuse its discretion in limiting Harris's cross-examination because his intended questions were not relevant to any issues at trial. Therefore, we affirm Harris's convictions.

Viewed in the light most favorable to the verdict, the trial evidence shows that Harris, Kevin Boyd (Harris's cousin), and Adrian Ansley (Boyd's girlfriend) were members of the same gang. Boyd and Ansley, along with other gang members, regularly gathered at a house on Ewing Street in Atlanta during the summer of 2013. Boyd obtained a gun from someone at the house and had it with him on the night of August 10, 2013.

That night, Harris, Boyd, Ansley, BJ Crutchfield, and his son, BJ Jr., were at a house known as the "Studio" in Monroe, Georgia. At about 9:00 p.m., Ansley drove Harris and Boyd to pick up some meth that they planned to sell. Boyd had previously placed the gun under the passenger seat of Ansley's car, and the gun was in the car during the trip. After picking up the meth, Boyd called Jurshia Jones and told her he would be coming by her house, which was located next door to the Studio. At 9:15 p.m., Ansley dropped Harris and Boyd

2

off at the Studio and left. At some point, Harris and Boyd went next door to Jones's house.

Meanwhile, Ray Murphy arranged to buy an ounce of meth from someone named "BJ." Murphy asked his friend, Eric Mann, for a loan to buy the meth. Mann's wife drove Murphy and Mann to Jones's house, and she waited in the car while Murphy and Mann went inside the house.

Once inside, Murphy and Mann sat in the living room with Boyd and talked about the video game Boyd had been playing. When Harris walked into the room, he pulled out a gun, cocked it, and pointed it at Murphy and Mann. Mann said he did not have any money. Boyd and Murphy began arguing, and Boyd reached into Murphy's pockets. While Boyd and Murphy argued, Mann made his way to the door, unlocked it, and started to open it before Boyd grabbed him and Harris hit him on the head with a gun, which discharged. Murphy tried to escape by pushing through a window. Harris shot Murphy in response. Mann managed to escape and ran to his wife's car as she was starting to leave. Murphy exited the house and tried to reach Mann's car, but fell when additional gunshots were fired. Murphy was found unresponsive by police and died during surgery.

Police later stopped and arrested Ansley while she was driving other people from the Ewing Street residence. During the stop, police recovered a gun that Ansley identified at trial as the one that Boyd had previously placed in her car. A GBI firearm examiner testified the gun was used to fire the shell casings found at the crime scene.

A few days after the shooting, Harris admitted to a fellow gang member that he shot Murphy. Harris said that Boyd initially shot Murphy because he thought Murphy was going to rob them. Harris also said that, once Murphy made it outside the house, Harris fired another shot at him. Harris also spoke to a GBI investigator after being advised of his rights. Harris initially denied any involvement in Murphy's death. He later admitted to the GBI investigator that he was present for the crime but denied shooting anyone.

1. Although Harris does not challenge the sufficiency of the evidence, it is our practice in murder cases to review the record and determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence outlined above was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Harris was guilty of the crimes for which he was

convicted under the standard of <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Harris argues that the trial court violated OCGA § 17-8-57 by commenting on the credibility of co-defendant Boyd when telling him, "You said you were going to stand up and be credible and be a man." Boyd had agreed prior to trial to be a State's witness in exchange for a grant of derivative use immunity, but indicated to a prosecutor during the trial that he had changed his mind. The State called him anyway, and he testified that Harris had nothing to do with the shooting. The State attempted to impeach Boyd with his prior contradictory statements. When the State attempted to ask additional questions on re-direct, the following occurred:

> BOYD: I plead the Fifth.
> COURT: You can't plead the Fifth because you've been given immunity.
> BOYD: Well — oh, I've been — oh, so that means not [sic] nothing to me.
> COURT: What?
> BOYD: So immunity means — I want to be clear about you, Judge, because he told me something else.
> COURT: Listen to me, then. I signed an order saying anything you said up here cannot be used against you. The Fifth Amendment is about the right not to incriminate yourself and say something that can be used against you. I took that power away from the State. You

have no right to claim the Fifth Amendment because you cannot incriminate you[rself]. He's asked you a simple question.
BOYD: Okay. I'm sorry, Judge.
COURT: You said you were going to stand up and be credible and be a man.

Harris complains that the court's comments about being credible were a violation of OCGA § 17-8-57. He concedes that he did not object to the trial court's statement and that, as a result, our review is only for plain error. See OCGA § 17-8-57 (b).[2]

There are four prongs in the test for plain error.

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are

---

[2] Under the prior version of OCGA § 17-8-57, a trial judge's violation of the statute required automatic reversal, even if the defendant failed to object. Under the amended version of the statute, which went into effect in July 2015, a failure to object allows review only for plain error (unless the trial judge expresses an opinion "as to the guilt of the accused," in which case reversal is still automatic). OCGA § 17-8-57 (b), (c). In previous cases, we declined to address whether the new statutory standard of appellate review applied to cases tried before the effective date of the amendment, because in those cases no error occurred even under the former version of the statute. See, e.g., Burney v. State, 299 Ga. 813, 823 (4) n.10 (792 SE2d 354) (2016); Pyatt v. State, 298 Ga. 742, 747 (3) n.9 (784 SE2d 759) (2016). Here, Harris's trial occurred after the effective date of the amendment, and so the question of which standard applies is not at issue.

satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations, punctuation and emphasis omitted).

Assuming without deciding that the court's instructions to Boyd about his immunity reflected a comment about his credibility in violation of OCGA § 17-8-57, Harris has failed to establish that the error affected his substantial rights, given the strong evidence of guilt against him. Mann and Jones's daughter placed Harris with Boyd inside the residence on the night of the shooting. Harris admitted that he was present for the shooting, although he claimed that he did not participate in the crime. Mann testified that Harris shot Murphy in the house, and Harris admitted to a fellow gang member that he shot Murphy, although he said he fired only outside the house. In the light of this strong evidence of guilt, Harris has failed to carry his burden of demonstrating that the court's comments affected the outcome of the trial. See Hampton v. State, 302 Ga. 166, 169 (2) (805 SE2d 902) (2017) (no plain error where the evidence of guilt, including the identification of the defendant as the shooter, was strong).

3. Harris next argues that the trial court erred in preventing him from cross-examining the GBI agent who interviewed him about the agent's failure to use a Miranda[3] waiver form. We disagree.

On cross-examination, Harris asked the GBI agent why, after advising Harris of his rights, the agent did not use a Miranda waiver form. The agent replied that he was trained to use a GBI-issued card for reading rights, prompting Harris to ask whether the agent knew that "great deals of local law enforcement" used Miranda waiver forms. The agent responded that he had seen waivers used at times. Harris began to ask the agent, "[d]on't you feel, as an investigator, that . . . ," before the trial court interjected and excused the jury. In response to questioning by the trial court, Harris's counsel acknowledged that Harris did not claim that his custodial statements were involuntary and conceded that the use of a waiver form was not required. The trial court ruled that Harris could not ask about the failure to use a waiver form, finding that the prejudice created by his insinuation that the GBI agent did something wrong for failing to use a waiver form "far outweigh[ed]" any probative value of the evidence. Although Harris's counsel argued that the GBI agent "put a whole bunch of

[3] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

8

words in my client's mouth," the trial court responded that Harris could inquire about that by cross-examining the agent with a transcript of the interview.

Reviewing the trial court's limitation of cross-examination for an abuse of discretion, see Smith v. State, 300 Ga. 538, 541-542 (3) (796 SE2d 666) (2017), we conclude that no error occurred. Although a defendant's right to cross-examine witnesses is secured by the Sixth Amendment to the Constitution, that right does not allow for unlimited questioning. Id. Trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, "interrogation that is . . . only marginally relevant." State v. Vogleson, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002) (citation omitted).

Here, the GBI agent's failure to use a waiver form was not relevant to any issue at trial. Harris was not challenging the voluntariness of his custodial statements, a challenge for which a waiver of rights form might have been relevant. See Humphreys v. State, 287 Ga. 63, 74 (6) (694 SE2d 316) (2010) (an express written or oral statement of a waiver of rights is "usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver") (citation and punctuation omitted). To the extent Harris

9

wished to challenge the accuracy of the GBI agent's testimony regarding Harris's custodial statements, the trial court permitted Harris to do so, but he elected not to. Under these circumstances, the trial court did not abuse its discretion in imposing a reasonable limit on the cross-examination of the GBI agent.

Judgment affirmed. All the Justices concur.

Decided January 29, 2018.

Murder. Walton Superior Court. Before Judge Ott.

Crawford & Boyle, Eric C. Crawford, for appellant.

Layla H. Zon, District Attorney, W. Cliff Howard, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.