**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2018**

# In the Court of Appeals of Georgia

A18A1082. CRUZ v. THE STATE.

MCMILLIAN, Judge.

Antonio Cruz appeals from the denial of his motion for new trial after a jury convicted him of rape, aggravated sodomy, burglary in the first degree, aggravated assault, false imprisonment, and terroristic threats.[1] Cruz argues on appeal that there was insufficient evidence to support his conviction for terroristic threats; that the trial court erred by not admitting evidence which contained a prior inconsistent statement; and that his constitutional right to cross examine a witness was violated. Finding no error, we affirm.

---

[1]Additionally, Cruz was indicted for two counts of aggravated stalking which the State nolle prossed before trial.

Viewed in the light most favorable to the verdict,[2] the evidence at trial showed that the victim and Cruz married in 2006 and have three minor children together. Prior to September 2014, they had been having marital problems, prompting the victim to call the police on several occasions because she felt like she was in danger. On May 29, 2014, the victim moved out of the house and into her own apartment. Then in July 2014, she sought a temporary restraining order, claiming that Cruz was threatening her, would frequently call and text her, and went to her apartment and physically assaulted her.

On September 18, 2014, the victim was alone in her apartment while her children with Cruz were spending the night at his apartment. She was asleep in her bedroom when sometime around midnight, Cruz entered her apartment using a spare key taken from their son's book bag. The victim said that she heard a noise at her bedroom door and then Cruz broke the door down. He jumped on her bed and when she started to yell, he called her names and told her to "shut up" or he would kill her. Cruz then put his hands around her neck and applied pressure until she fainted, later waking up on the floor at his feet. After she awoke, Cruz said he wanted to talk about rumors he had heard that she was seeing someone else, which she denied. The victim

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

agreed to talk with Cruz but asked that they go downstairs, explaining at trial that she was hoping someone else would be able to hear them. Once the victim went downstairs, Cruz threatened her, telling her that he had a gun in his bag and that he was going to kill her and then kill himself. He repeatedly called her names and stated she would regret reporting this incident because if he were to go to jail, he was going to have her family in Mexico killed. He then had sexual intercourse with her on the couch, performed oral sex on her, and bit her on her back.

At some point, the victim observed a large kitchen knife on her kitchen table, which she did not remember putting there. Cruz asked her to go to the kitchen with him several times but she avoided doing so, and he stood by the front door to prevent her from leaving. The victim was worried that he was going to kill her, and she spoke to him about her concerns for their children, who were still at Cruz's house. Cruz forced the victim to drive to his apartment where they checked on the children and then returned to her apartment. Once there, the victim pretended to be calm so Cruz would not think she was going to call 911. When Cruz eventually left, the victim called her adult daughter, who lived nearby, and asked her to call the police.

The police responded to the 911 call to find the victim and her daughter at the scene, and the victim was visibly upset and crying. While the police officers were

3

there, she repeatedly expressed her concerns for her children's safety, cried, and pleaded for the police to hurry and check on them because Cruz said he had a gun.

Officers went to Cruz's house to check on the children. They attempted to talk with Cruz outside of his house, but Cruz refused to come out, stating that he was arrested last time he went outside his house to speak with police. Although the officers made no mention of any allegations by the victim of violence or rape, Cruz told them that the victim had hurt herself before and then blamed him for it and that she had previously accused him of rape. When communicating with the police, he said that he knew he was going to be arrested and that once he spoke to his lawyer, he would turn himself in, but the officers continued to try to persuade him to come outside and talk with them because they were concerned about the children's safety. Cruz came outside approximately two hours after police arrived, and the officers transported him to the police station.

Meanwhile, the police continued to interview the victim at her apartment before she was taken to the hospital. During that time and while at the hospital, the victim was still distraught, expressed concern for her children, and appeared to have been traumatized. After Cruz was convicted and his motion for new trial was denied, this appeal followed.

1. Cruz argues that there was insufficient evidence to sustain his conviction for terroristic threats because the victim's testimony was uncorroborated.[3] He asserts that the testimony showing that the victim was upset and crying after the incident was not severe enough to be considered corroboration of any alleged threats because anyone who had just been the victim of rape, aggravated sodomy, aggravated assault, and false imprisonment would be upset and crying, without regard to any threats.

The standard of review for cases contesting the sufficiency of the evidence is whether, in the light most favorable to the verdict, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Under OCGA § 16-11-37, "[a] person commits the offense of a terroristic threat when he or she threatens to . . . [c]ommit any crime of violence . . . [w]ith the purpose of terrorizing another[.]" OCGA § 16-11-37 (b) (1) (A) & (2) (A). The statute provides, however, that "[n]o person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (b) (3). Nevertheless, only "[s]light circumstances may be sufficient for corroboration and the question of corroboration

_____

[3]Cruz does not contest the sufficiency of the evidence as to his remaining convictions and we find that the evidence supporting these convictions was sufficient. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value." (Citation omitted.) *Lambert v. State*, 325 Ga. App. 603, 606 (2) (754 SE2d 392) (2014); see also *Boone v. State*, 155 Ga. App. 937, 939 (1) (274 SE2d 49) (1980).

Therefore, "the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged." (Citation omitted.) *Pringle v. State*, 281 Ga. App. 235, 237 (1) (a) (635 SE2d 839) (2006); see also *Atkins v. State*, 304 Ga. 240, 242 (2) (__ SE2d __) (2018) (explaining the independent corroborating evidence is required to support statutory rape conviction). Such "corroboration can consist of the victim's demeanor after the threat is communicated" and wounds or other injuries to the victim. (Citations and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 97 (1) (c) (625 SE2d 465) (2005) (evidence that victim injured during incident and witness's testimony as to her frightened state sufficient corroboration for terroristic threat conviction); see also *Tidwell v. State*, 312 Ga. App. 468, 470 (1) (a) (718 SE2d 808) (2011) (victim's testimony of threat corroborated by independent evidence of injury to her face and officer's testimony that victim was crying, looked as if she had

6

been crying, and was scared); *Smith v. State*, 273 Ga. App. 843, 844 (616 SE2d 183) (2005) (threat corroborated by evidence that victim was scared and crying).

Cruz admitted in his statement to police that he was in the victim's apartment at around 11:30 p.m. that night and said that he hit her with a box while moving it, causing her to yell. At trial, he testified that he went to the victim's apartment at around 11:40 or 12:00 p.m., using his son's keys to let himself in. Cruz went upstairs into the victim's bedroom. He admitted that the victim became scared and very nervous, collapsing to her knees on the floor, while he was there. He also admitted that the victim screamed when she became scared after he kicked a box. The victim also testified that after the incident, she was visibly upset and crying and told the police multiple times that she feared for her children since Cruz said he had a gun and threatened to kill her children and her. She was insistent that the police go to Cruz's house to make sure her children were safe. When the victim was at the hospital, the nurse testified that she looked like someone who had been traumatized and continued to express concern for her children's safety. Additionally, the victim had a bite mark on her back and bruising on her arms, knees, legs, shoulder, and chest. We find that this evidence, including Cruz's statement and testimony, was sufficient to corroborate the victim's testimony.

2. Cruz next asserts that the trial court erred in denying his request to admit into evidence the physical copy of a letter containing what Cruz contends was a prior inconsistent statement by the victim. We review the trial court's ruling on the admissibility of the letter for a clear abuse of discretion. *Ramirez v. State*, 303 Ga. 232, 235 (II) (811 SE2d 416) (2018).

Prior to the victim's trial testimony and outside the jury's presence, the defense sought a ruling on the admissibility of a letter, written on several pages of note paper, sent by the victim to Cruz while he was in jail. The State objected to the admission of the letter on the grounds that it had been altered: portions were missing and parts of it were highlighted and underlined. Moreover, although the victim admitted writing the majority of the letter, she denied writing the portion on the back of the page that Cruz asserted contained the inconsistent statement (the "Disputed Portion").[4] The trial

---

[4] The Disputed Portion read (with the portions read to the jury in italics):

*Antonio, if I said lies it's because of my sickness. You know how I get when I get nervous, that I even end up in the hospital. Anyway, I can't change what I said.* I'm not going–they are a lot. *I'm not going to jail and lose my kids* and they are a lot. Why did you look for me if you already had another woman? Take good care.

court agreed with the State that the defense could ask about the Disputed Portion but made no ruling on the admissibility of the letter at that time.

Defense counsel subsequently asked the victim about the letter during cross-examination, including whether she wrote the Disputed Portion, reading portions of the language aloud for the jury. The victim admitted writing the letter except for the Disputed Portion. She also stated that the letter had been cut and marked and that it was not in the same condition as when she sent it. Cruz later testified that he recognized the letter; that he did not write any of it since it was written in pen, which he was not allowed to have in jail; and that the letter was in the same condition as when he received it. The only alteration he admitted making was underlining certain parts for his counsel.

Later, during a court recess outside the presence of the jury, defense counsel asked to voir dire the victim about the letter in order to decide if the defense would call her to testify. During voir dire, defense counsel went line by line through the letter and asked the victim to verify what she had written. She testified that she wrote all of the letter, with the exception of a few pictures and notes written by the children and the Disputed Portion. After she was excused, defense counsel argued that

9

admission of the entire letter was crucial to his case since it contained the victim's prior inconsistent statement. He asked that the letter be allowed to go to the jury in order for them to compare the handwriting that the victim identified as hers with the handwriting on the Disputed Portion in order to determine her credibility. The State argued that since the Disputed Portion had not been authenticated, and since no one, including the victim, had identified the handwriting as the victim's, it could not be allowed into evidence for impeachment purposes. Defense counsel then re-called Cruz who testified that he was familiar with his wife's handwriting and that the portion of the letter that contained the inconsistent statement was written in her handwriting.

Following a recess, the trial court ruled that the letter was not admissible on the ground that the exemplar for the handwriting cannot be the same letter that the defense was trying to get into evidence.[5] Subsequently, during jury deliberations, the jury sent a note asking to see the letter. The court replied that "The letter was not admitted into evidence. You are to consider only the testimony of the witnesses under oath and the exhibits admitted into evidence."

_____

[5] After this ruling, the trial court allowed defense counsel to read the Disputed Portion into the record as a proffer.

Cruz raised the issue of the letter again in his motion for new trial. In its order denying Cruz's motion, the trial court gave three reasons for excluding the letter: (1) the letter, which had been in Cruz's possession, showed signs of potential tampering – it had been highlighted, underlined, and a portion of one page appeared to have been cut – although neither the victim nor Cruz admitted to these alterations, and the Disputed Portion was the only portion of the letter written on the back side of a page; (2) no witnesses other than Cruz were called to testify about the handwriting; and (3) no additional evidence of the victim's handwriting was proffered to be used as exemplars for the handwriting comparison.

Under Georgia law, "[t]he requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a) ("Rule 901"). "The party proffering the evidence must present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." (Citations and punctuation omitted.) *Smith v. State*, 300 Ga. 538, 541 (2) (b) (796 SE2d 666) (2017). Rule 901 provides a number of illustrative methods for authenticating a handwritten document,

11

including "[t]estimony of a witness with knowledge that a matter is what it is claimed to be[,]" OCGA § 24-9-901 (b) (1); "[n]on expert opinion as to the genuineness of handwriting based on familiarity not acquired for purposes of litigation[,]" OCGA § 24-9-901 (b) (2), and "[c]omparison by the trier of fact or by expert witnesses with specimens which have been authenticated[.]" OCGA § 24-9-901 (b) (3).

Initially, the trial court refused to admit the letter, finding that additional exemplars were required to compare to the Disputed Portion even though the victim identified portions of the letter as containing her handwriting. We disagree. Although exemplars may be found in writings other than the document sought to be admitted into evidence, the trial court cited no authority, and we have found none, holding that a handwriting exemplar must come in the form of a separate document. Rather, an exemplar can be any properly authenticated, voluntary writing.[6] See *U.S. v. Bell*, 833 F2d 272, 276 (IV) (B) (11th Cir. 1987) (jury permitted to compare signature on

---

[6] We also note that prior to the enactment of Rule 901, our Supreme Court held that a handwriting exemplar can be any voluntary writing. See *Thomas v. State*, 274 Ga. 156, 162 (7) (549 SE2d 359) (2001). That precedent is of limited utility, however, because prior to the enactment of the new Evidence Code, Georgia had no comprehensive authentication statute. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 644 (6th ed. 2018). Because OCGA § 24-9-901 closely tracks its federal counterpart, we look to federal appellate case law until a Georgia appellate court decides the issue under the new Code. See *State v. Almanza*, __ Ga. __ (2) (Case No. S18G0585, decided October 9, 2018).

disputed document to signature on driver's license). The victim testified that she had written most of the letter, other than the Disputed Portion, and we find that her testimony was sufficient to authenticate those portions and that they could, therefore, have served as a handwriting exemplar for comparison.

That is not to say that an exemplar is required to authenticate a handwritten document. See *Smith*, 300 Ga. at 540-41 (2) (b) (setting out means by which handwritten documents may be authenticated). Implicitly recognizing that a document may be authenticated by other means, the trial court also excluded the letter because the only evidence that the handwriting in the Disputed Portion belonged to the victim came from Cruz's testimony. Although under OCGA § 24-9-901 (b) (1) and (2), a writing may be authenticated through such nonexpert opinion testimony, "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court," and those "preliminary questions shall be resolved by a preponderance of the evidence standard." OCGA § 24-1-104 (a). When the evidence is sufficient to satisfy the preponderance of the evidence standard, the trial court does not abuse its discretion in admitting the evidence. *Greene v. State*, 303 Ga. 184, 186 (2) (811 SE2d 333) (2018). Here, the only evidence in the record that the victim wrote the Disputed Portion was Cruz's self-serving testimony, which the trial court, as a

preliminary matter, did not find credible enough to make out a prima facie case to authenticate that portion of the letter. We find no abuse of discretion in that determination.

Likewise, the trial court acted well within its discretion in determining that an alternative and independent basis existed for excluding the letter. The trial court found that the letter proffered at trial had been tampered with as it contained alterations that neither the victim nor Cruz admitted to making, including highlighting and one page that had been cut. Under these circumstances, we cannot say that the trial court abused its broad discretion in excluding the letter from the jury's consideration. See *United States v. Castaneda-Reyes*, 703 F2d 522, 525 (11th Cir. 1983) (affirming trial court's exclusion of document that showed that it appeared to have been subjected to tampering regardless of ground cited for its admission).

Finally, we note that the trial court allowed defense counsel to question the victim about the letter, and the jury heard the pertinent language from the Disputed Portion during that cross-examination.[7] Therefore, even if the trial court's exclusion of the letter could be considered error, we cannot say that any such error was harmful, in light of that and the other evidence at trial. See OCGA § 24-1-103 (a) ("Error shall

---

[7] See fn. 5, supra.

14

not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected[.]"). See *Williams v. State*, 302 Ga. 147, 152 n.5 (805 SE2d 873) (2017) (Any error in excluding proffered forensic toxicologist's testimony was harmless, where toxicologist's testimony would have been cumulative of medical examiner's testimony on the same point).

3. Cruz further argues that the trial court erred when it sustained an objection to a line of questioning regarding a bruise on the victim's back, improperly limiting his right to cross examination. "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the first instance to the sound discretion of the trial court, and we review a limitation of cross-examination only for an abuse of that discretion." *Lucas v. State*, 303 Ga. 134, 136-37 (2) (810 SE2d 491) (2018). That discretion is circumscribed by the defendant's right to a thorough and shifting cross-examination under OCGA § 24-6-611 (b) and the Confrontation Clauses of the United States and Georgia Constitutions. Id. at 137 (2).

During the cross examination of the State's crime scene investigator concerning the bruise on the victim's back, defense counsel asked whether the witness had heard of the term "hickey," and whether he was familiar with "passion marks." The State objected to both questions on the ground that it was improper for

15

defense counsel to so characterize the evidence, and the trial court sustained the objection. Beyond stating that "hickey" was a "colloquial term," defense counsel made no other arguments or objections in response to the State. Instead, after both objections from the State, defense counsel stated "All right[]" and "Okay[,]" then continued to ask about the size of the bruise.

Without deciding whether the trial court's rulings were in error or whether defense counsel acquiesced in such rulings, as the State argues, we find that Cruz's right to cross-examination was not improperly limited and that any alleged error was harmless in light of the defense's questioning of the sexual assault nurse examiner ("SANE") who treated the victim and who was qualified as an expert at trial. Defense counsel questioned the SANE in detail about the victim's bruise, including about the relative appearance of marks caused by suction and marks caused by biting, as well as the notation in her report on the victim indicating that she had a suction injury as well as a bite mark. Under these circumstances, any testimony from the crime scene investigator, who was not a medical expert, regarding whether the bruise could have been a passion mark or a hickey would have been merely cumulative, and its exclusion was harmless. See *Williams*, 302 Ga. at 152 n.5 (exclusion of cumulative evidence harmless error).

16

4. Cruz also argues that the trial court abused its discretion when it failed to exclude evidence introduced by the State showing that Cruz's brother was paying his attorney's fees and that this ruling had a chilling effect on his constitutional right to counsel.

During cross-examination, defense counsel asked the victim's adult daughter about an appointment the victim and she had with him at his office, during which the defense contended the victim made statements contradicting and undercutting her allegations against Cruz and considered signing an affidavit containing such statements.[8] In response to the State's questioning on redirect, the daughter testified that she believed that it was actually Cruz's brother, and not the victim, who asked her to set up the appointment and that the brother was funding Cruz's defense. Defense counsel objected to the State's question regarding who was paying for his fees on the ground of relevance, which was overruled. In its order on the motion for new trial, the trial court found that the evidence was relevant to the witness's credibility.

---

[8] The defense witnesses testified, however, that the victim refused to sign the affidavit.

Under OCGA § 24-4-401, relevant evidence is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." And when the defense "opens the door to a line of questioning, the prosecution has every right to pursue a thorough and sifting examination." (Citation and punctuation omitted.) *York v. State*, 329 Ga. App. 278, 278-279 (764 SE2d 866) (2014); see also *Smith v. State*, 258 Ga. 181, 182 (1) (366 SE2d 763) (1988). Therefore, the defense may not complain when the State uses the defense's line of questioning to make its own argument. See *Stone v. State*, 257 Ga. App. 306, 310 (1) (570 SE2d 715) (2002) (A defendant "cannot pursue a line of questioning, . . . which is intended to support his alibi and then complain when the State draws permissible conclusions from the responses to that line of questioning."); see also *Griffin v. State*, 265 Ga. 552, 554 (3) (458 SE2d 813) (1995) (affirming trial court's admission of testimony on redirect where "defense counsel opened the line of questioning . . . and then stopped the questioning in such a way as to raise an inference which redirect examination showed to be incorrect[]").

The State's redirect was aimed at refuting the inference that the victim sought out defense counsel in order to change her story, by introducing evidence that Cruz's

brother actually set up that appointment and that he had the motivation to seek a recantation as he was paying for Cruz's defense. We find no abuse of discretion by the trial court in overruling the defense's relevance objection and further find that Cruz has failed to establish how this line of questioning somehow chilled the exercise of his right to counsel or was otherwise harmful in light of the other evidence in the case.

*Judgment affirmed. Barnes, P. J., and Reese, J., concur.*