321 Ga. 490
FINAL COPY

S25A0410. ROUTH v. THE STATE.

PINSON, Justice.

Jousha O'Shea Routh was convicted of felony murder and other

crimes in connection with the shooting deaths of Saiful Bhuyia and

Rizanul Islam.[1] On appeal, he contends that the trial court abused

---

[1] The crimes occurred on September 10, 2017. On March 2, 2018, a Fulton County grand jury indicted Routh for malice murder of both victims (Counts 1 and 2), felony murder of both victims predicated on attempted armed robbery (Counts 3 and 4), felony murder of both victims predicated on aggravated assault (Counts 5 and 6), felony murder of both victims predicated on criminal damage to property (Counts 7 and 8), attempted armed robbery of Bhuyia (Count 9), aggravated assault of both victims (Counts 10 and 11), criminal damage to property (Count 12), and possession of a firearm during the commission of a felony (Count 13). Routh was tried before a jury from February 3 to 7, 2020. The jury found Routh not guilty of the malice murder of Islam (Count 2), did not reach a verdict as to the malice murder of Bhuyia (Count 1), and found Routh guilty of all other counts. The trial court later nolle prossed Count 1. On February 10, 2020, the trial court entered a final judgment sentencing Routh to life in prison for each of the two counts of felony murder predicated on criminal damage to property (Counts 7 and 8), to be served consecutively, 30 years in prison for the attempted armed robbery of Bhuyia (Count 9), also to be served consecutively, 20 years in prison for each of the two counts of aggravated assault (Counts 10 and 11), to be served concurrently with the first life sentence, and five years in prison for possession of a firearm during the commission of a felony (Count 13), to be served consecutively, for a total term of imprisonment of two life sentences plus 35 years. The remaining counts were merged or vacated by operation of law.

Routh timely filed a motion for new trial, which he later amended. He

its discretion by limiting his cross-examination of the lead detective on two occasions: first, by limiting Routh's questions about whether the detective ever expressed doubts that Routh was the shooter; and second, by preventing Routh from asking the detective if he knew whether the fingerprints at the crime scene, which were matched to Routh, could have been left before the shooting. But the trial court did allow some questioning about the detective's doubts, and it had discretion to limit Routh's cross-examination to ensure that Routh did not take unfair advantage of a prior evidentiary ruling that would have prevented the State from responding. The trial court also had discretion to conclude that Routh's question about the age of the fingerprints was outside the scope of the officer's lay testimony. So we affirm Routh's convictions.

1. The evidence at trial showed the following. At around 9:00 on the night of the shooting, Bhuyia, Islam, and two other workers at a

waived an evidentiary hearing on the motion. On October 22, 2024, the trial court denied Routh's motion for new trial. Routh filed a timely notice of appeal. The case was docketed to the term of this Court beginning in December 2024 and submitted for a decision on the briefs.

small convenience store that Bhuyia co-owned were locking up after closing when they saw a white car coming down the street. The car stopped briefly and then began to drive away. But then the car turned around, cut its lights, and came back. Two men jumped out and demanded money from the victims.

Bhuyia and Islam fled to Bhuyia's car, which was parked nearby. The two men from the white car chased them and tried to open the door of Bhuyia's car. The two other store workers, meanwhile, had run away and hidden in some bushes. As they were running, they heard two shots, and then a "big boom." After the perpetrators left the scene, the workers came out of the bushes and went over to Bhuyia's car. The car had crashed into the side of the building. Both victims had been shot. Bhuyia was dead, and Islam died from his injuries a few days later.

The store workers called the police. When officers arrived, they interviewed the workers and viewed footage of the shooting captured by a surveillance camera outside the store. (The surveillance footage was later played for the jury at trial.) The video showed that the

man from the passenger side of the white car had tried to unlock the door of Bhuyia's car while the victims were trying to drive away. When officers dusted Bhuyia's car door for fingerprints, they found some usable fingerprints and palm prints. Those prints were compared against a law enforcement database. They were matched to Routh.

With Routh identified as a suspect, the police obtained his phone number and his cell phone records. One of Routh's most frequent contacts was Shea Paul, who was later revealed to be Routh's girlfriend, and so the police obtained her phone records as well. Officers also reviewed Paul's social media accounts. That led them to the Facebook page of Paul's mother, where officers saw a photo of a white car that looked a lot like the one in the surveillance video. Officers ran that car's license plate number using a database they had access to, and learned that the car was recorded at an intersection a quarter mile from the crime scene a few minutes after the shooting.

The police spoke to Paul and ruled her out as a suspect based

on her interview and her cell phone location data. But Paul told the police that Routh sometimes used her mother's car, too. And Routh's cell phone location data did not rule him out as a suspect. Instead, it showed that someone used his phone near the scene of the murder at 8:45 p.m. and 8:51 p.m. — about ten to fifteen minutes before the shooting — and that the phone was not used again until 1:32 a.m. the next day, which suggested to the State's cell-phone expert that the phone was turned off for that time period.

Law enforcement officers showed Paul the surveillance footage of the murder. At trial, she was shown the footage again. She identified Routh as the shooter. In making that identification, Paul testified that she recognized Routh's clothing and "[h]is mannerisms, how he ran, pulls the pants up, everything."

2. Routh contends that the trial court wrongly prevented him from asking the lead detective about the detective's remark that he did not know whether Routh was the shooter. We review a trial court's rulings about the scope of cross-examination for abuse of discretion. See *Smith v. State*, 300 Ga. 538, 541-542 (3) (796 SE2d 666)

(2017).

(a) Before trial, the State moved in limine to exclude references to any self-serving hearsay statements Routh may have made "unless and until the State opens the door or the Defendant testifies." The State was especially concerned about statements Routh made during his custodial interview with police. The court granted the motion to exclude Routh's statements in his interview. The court later clarified that any reference at all to the interview was excluded.

At trial, when Routh's counsel cross-examined the officer who had conducted the interview, Detective Calvin Thomas, counsel asked him, "Did you ever say to Mr. Routh that you don't know whether he did the shooting?" Counsel was referring to a part of the interview where the detective showed Routh some of the evidence against him and said, "You've heard of fingerprint dust and DNA, and things of that nature. . . . Left palm driver's door, left palm . . . on the rear door. So this puts you there. All right? Now, whether you did the shooting I don't know. Okay? But this puts you there."

The State objected that the trial court had excluded Routh's

6

police interview. Counsel argued that he was not trying to introduce the interview or Routh's self-serving hearsay, only the detective's statement. But the State responded that it would be unable to rehabilitate the detective or give context to his statement without referencing the interview, which had been excluded. The trial court agreed that counsel could not take the single statement from the interview out of context. But the court allowed counsel to ask the detective whether, on the date of the interview, he believed Routh was the shooter.

Counsel asked the detective that question. The detective said that he did know Routh was the shooter at that time. Counsel then tried to impeach the detective with the excerpt from the interview. The State objected again. This time, the trial court ruled that counsel could ask the detective whether he had made the statement, but without revealing the existence of the interview. The court further ruled that the State on re-direct would then be allowed to ask the detective how he formed his opinion that Routh was the shooter.

Counsel then asked Detective Thomas: "[D]id you state that

7

you didn't know whether or not Jousha Routh was the shooter. Did you say that?" The detective responded, "I made that statement to him. I did." Counsel then moved on to other questions. On redirect, the State asked the detective why he believed Routh was the shooter. The detective said his belief was based on the fingerprint evidence from the scene, the cell phone location evidence, and Routh's connection with Paul and her mother.

(b) Any person charged with a criminal offense "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. See also Ga. Const. of 1983, Art. I, Sec. I, Par. XIV ("Every person charged with an offense against the laws of this state . . . shall be confronted with the witnesses testifying against such person."); OCGA § 24-6-611 (b) ("The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."). But that right "is not an absolute right." *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012) (citation and punctuation omitted). Criminal defendants are not guaranteed a cross-examination that is "effective in whatever way,

8

and to whatever extent, the defense might wish." *Carston v. State*, 310 Ga. 797, 800 (2) (854 SE2d 684) (2021) (citation and punctuation omitted). Instead, trial courts have discretion to impose reasonable limits on the scope of cross-examination, see *Smith*, 300 Ga. at 541-542 (3), and a trial court's limitations on cross-examination will generally be upheld as reasonable "so long as the court does not cut off all inquiry on a subject that the defense is entitled to cross-examine on." *Ellington v. State*, 314 Ga. 335, 345 (3) (877 SE2d 221) (2022) (citation and punctuation omitted).

The trial court here did not abuse its discretion when it restricted defense counsel's cross-examination of Detective Thomas. The court had excluded Routh's police interview, a ruling that Routh does not challenge on appeal. So when counsel tried to ask the detective about a statement that was made during the interview, it was reasonable for the court to put some boundaries on those questions to ensure that the court's order in limine was fairly applied. Cf. *Harvey v. State*, 296 Ga. 823, 832-834 (2) (b)-(c) (770 SE2d 840) (2015) (trial court had discretion to grant mistrial when defendant

9

brought up aspects of police interview that had been excluded by order in limine). To that end, the court did not allow counsel free rein to bring up the detective's statement with no context. But it also did not "cut off all inquiry on [the] subject." *Ellington*, 314 Ga. at 345 (3) (citation and punctuation omitted). Instead, the court allowed counsel to use the detective's statement to impeach his testimony about his mental impressions during the interview, and then allowed the State to ask limited follow-up questions to put the detective's statement in context. Those rulings reflect a careful approach to the issue that fairly enforced the court's order. The court was well within its discretion to impose those reasonable limits on cross-examination. See *Smith*, 300 Ga. at 541-542 (3). See also *Johnson v. State*, 316 Ga. 672, 685 (5) (889 SE2d 914) (2023) (trial court did not abuse its discretion by restricting the defendant from asking certain questions on cross-examination that could have impugned the witness's character or given the jury a false impression about the underlying facts, since the defendant was allowed to ask about a broad range of topics and to impeach the witness in other ways).

10

3. Routh also contends that the trial court wrongly prevented his trial counsel from asking Detective Thomas whether, in his opinion, Routh's fingerprints could have been left on the victim's car sometime before the shooting. The State objected that the question called for speculation and was outside the detective's area of expertise. The trial court sustained the State's objection and explained that Detective Thomas "[had] not been admitted as an expert in fingerprints, as to when fingerprints can be left and how long they can remain on an object or anything of that nature."

Under OCGA § 24-7-701 (a) (Rule 701 (a)), a lay witness may give opinion testimony if the opinion is (1) "[r]ationally based on the perception of the witness," (2) "[h]elpful to a clear understanding of the witness's testimony or the determination of a fact in issue," and (3) "[n]ot based on scientific, technical, or other specialized knowledge." See also *Durden v. State*, 318 Ga. 729, 733 (1) (899 SE2d 679) (2024). We review for abuse of discretion a trial court's decision whether to allow lay opinion testimony under Rule 701 (a). See *Gude v. State*, 313 Ga. 859, 868 (4) (874 SE2d 84) (2022).

Detective Thomas, the lead investigator in the case, gave factual testimony about the steps in the police investigation. It was within the scope of that testimony for the detective to tell the jury that, as a matter of historical fact, Routh was identified as a suspect when his fingerprints were found on the victim's car. But it is less obvious that the detective's opinion about the possible age of those fingerprints was admissible. Detective Thomas was not qualified as an expert in fingerprints, and no one had laid a foundation with respect to his "experience and training" in fingerprints. See *Holmes v. State*, 301 Ga. 143, 145 (1) (800 SE2d 353) (2017) (explaining that law enforcement officers can give opinion testimony, even if they are not qualified as experts, "if an adequate foundation is laid with respect to their experience and training") (citation and punctuation omitted). And although a lay witness might be allowed under Rule 701 (a) to give an opinion about fingerprint evidence if the opinion could be based in common, non-expert knowledge, answering other questions about fingerprint evidence might require more technical or specialized knowledge. Indeed, in this very case, the State called

a latent fingerprint examiner who was qualified as an expert. See also, e.g., *Isaac v. State*, 319 Ga. 25, 27 (1) (901 SE2d 535) (2024) (discussing an "expert in fingerprint examination and analysis" who testified that "fingerprints on a car could be wiped or washed down"). Given the circumstances here — where the prints were found outside on a car that was exposed to the elements — the trial court could reasonably conclude that the age of Routh's fingerprints was a matter that required "scientific, technical, or other specialized knowledge," see OCGA § 24-7-701 (a), and thus fell on the expert side of that line, see *Isaac*, 319 Ga. at 27 (1). The court therefore did not abuse its discretion in concluding that Detective Thomas, who was not admitted as an expert in "when fingerprints can be left and how long they can remain on an object," and for whom no foundation was laid as to his experience and training in fingerprints, could not offer an opinion on the question. See *Gude*, 313 Ga. at 868 (4).

*Judgment affirmed. Peterson, C. J., Warren, P. J., and Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ., concur.*

Decided May 6, 2025.

Murder. Fulton Superior Court. Before Judge Richardson.

*Benjamin A. Davis, Jr.*, for appellant.

*Fani T. Willis, District Attorney, Elaine L. Thompson, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.