**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 20, 2025**

# In the Court of Appeals of Georgia

A25A1549. OSBORNE v. THE STATE.

PER CURIAM.

A jury found Alexander Osborne guilty of aggravated assault and possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, Osborne appeals, asserting: (1) the trial court improperly limited his cross-examination of the victim; (2) the trial court committed plain error in allowing a police officer to render expert ballistics testimony; and (3) the cumulative effect of the errors affected the outcome of trial. For the following reasons, we find no error and affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence shows that Osborne lived in the same rural area as the victim, Edward Hair, and the two had an

___

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

antagonistic relationship. According to Hair, Osborne had stabbed him in the past, and Hair threatened to beat Osborne.

On July 8, 2023, Hair went to a neighbor's house to do some work. He was carrying a pry bar and had a knife on his belt. Hair cut through the woods to reach the property, and Osborne was already there. Hair asked Osborne "what the f*ck he was doing over there[,]" and Osborne responded by pointing a shotgun at Hair. Hair turned to flee, and Osborne fired twice, peppering Hair with birdshot pellets, which struck Hair in his arm, head, back, and side; and some of the pellets remain lodged in Hair's body. Based on the distribution of the pellets, a police investigator estimated Hair was at least 45 meters away from Osborne when he was shot.

Hair ran back to his home and called the police. Osborne was later arrested and charged with aggravated assault and possession of a firearm during the commission of a felony.[2]

Prior to trial, the State filed a motion in limine to prevent Osborne from introducing evidence of Hair's prior convictions or his pending criminal charges. The trial court ruled that Osborne would be allowed to question Hair about his prior felony

---

[2] Osborne was also charged with loitering or prowling, but the trial court directed a verdict of acquittal on this count.

convictions to attack his credibility, but Osborne could not otherwise bring in evidence of prior bad acts. With respect to the pending criminal charges, the trial court ruled that the fact Hair was facing prosecution was admissible, but not the nature of the charges.

At trial, Hair was cross-examined, and he admitted to previously threatening Osborne with a knife. Hair was also asked whether he had prior convictions, and he responded as having "a couple of them" for aggravated assault. When asked if he discussed the charges he was currently facing with the prosecutor trying the case, Hair responded negatively.

In closing, Osborne argued that Hair was a twice-convicted felon (for aggravated assault) who was facing pending charges, had previously threatened him, and was "coming at" him during the incident in question. Osborne argued that Hair meant to do him harm by showing up with a knife and a pry bar. Osborne maintained that he only used the gun in self-defense. But the jury rejected Osborne's defense and found him guilty of aggravated assault and possession of a firearm during the commission of a felony. This appeal follows.

1. Osborne argues the trial court improperly limited his cross-examination of Hair, thus violating his constitutional right to confront witnesses. More precisely, Osborne contends that he should have been able to question Hair more thoroughly regarding the severity of his pending criminal charges. We disagree.

Although a criminal defendant's right of cross-examination is guaranteed by the Sixth Amendment, a defendant does not have an absolute right that mandates unlimited questioning. *See, e.g.*, *Johnson v. State*, 348 Ga. App. 667, 671 (1) (a) (824 SE2d 561) (2019).

> [T]rial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id*. at 671-672 (1) (a) (citation and punctuation omitted). A trial court's limitations on cross-examination will "generally be upheld as reasonable so long as the court does not cut off all inquiry on a subject that the defense is entitled to cross-examine on." *Routh v. State*, 321 Ga. 490, 493 (2) (b) (915 SE2d 566) (2025) (citation and punctuation omitted).

Here, Osborne does not contend that information about the severity of Hair's pending charges was admissible to impeach his character. Rather, Osborne's sole purpose in seeking to question Hair about those charges was to establish his *bias—i.e.,* that he was testifying against Osborne to curry favor with the State. Although a witness's bias is always a legitimate issue to be proved, *see* OCGA § 24-6-622, evidence admitted to prove bias still must pass the balancing test in OCGA § 24-4-403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. *See, e.g.*, *Merritt v. State*, 311 Ga. 875, 880-881 (3) (a) (i) (860 SE2d 455) (2021).

In this case, the trial court found the fact that Hair was facing prosecution was admissible, but that the nature of the charges need not be introduced. Given that it did not cut off all inquiry into Hair's pending charges, the trial court did not abuse its discretion in limiting Osborne's cross-examination of Hair regarding his pending charges. *See, e.g.*, *Watkins v. State*, 276 Ga. 578, 581 (3) (581 SE2d 23) (2003).

Furthermore, after the trial court made its ruling, Osborne's counsel responded: "Thank you, Your Honor. . . . Understood." In other words, Osborne acquiesced in the ruling.

> No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further.

*Stinson v. State*, 352 Ga. App. 528, 533 (1) (b) (835 SE2d 342) (2019) (citation and punctuation omitted). Under these circumstances, Osborne is not at liberty to complain about the trial court's ruling.

2. Osborne also alleges the trial court committed plain error by allowing a police officer, who was not qualified as an expert, to testify in that capacity.[3] Specifically, he points to the testimony of the police investigator who—based on his experience with shotguns and birdshot—estimated that Osborne was standing more than 45 meters from Hair when he shot him.

> A finding of plain error requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings.

---

[3] Osborne acknowledges that his failure to object below requires review for plain error.

*Fraser v. State*, 329 Ga. App. 1, 2 (763 SE2d 359) (2014) (citation and punctuation omitted).

Here, Osborne is unable to show his substantial rights were affected for at least two reasons. First, although the investigator was not qualified as an expert, the trial court could have possibly qualified him as one. To qualify as an expert, "generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status." *Lanwehr v. State*, 265 Ga. App. 359, 361 (3) (593 SE2d 897) (2004). And in this case, the investigator testified that he was knowledgeable about shotguns both through his work as a police officer and due to his military training. Given this testimony, the trial court could have exercised its discretion to find the investigator qualified to testify as an expert. *See id.* ("It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert.") (citation and punctuation omitted).

Second, the investigator's testimony was not the only evidence of the distance between Osborne and Hair at the time of the shooting. Using a photograph of the

crime scene and a laser pointer, Hair demonstrated for jurors where he was standing relative to Osborne. In light of this evidence, it is unlikely the investigator's estimation of distance had any impact on the verdict. *See Hughes v. State*, 310 Ga. 453, 455 n. 2 (851 SE2d 580) (2020) (holding that defendant was not harmed by police officer's opinion testimony that was cumulative of other admissible evidence).

3. Finally, Osborne claims that due to the cumulative harm of the errors, his conviction should be reversed. But given that Osborne has shown no error (and we only presumed one error), his cumulative harm argument lacks merit. *See, e.g.*, *Bryan v. State*, 371 Ga. App. 769, 779 (4) (903 SE2d 160) (2024).

*Judgment affirmed. Division Per Curiam. All Judges concur.*